UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROY CONTEH, VICTOR SASAY a/k/a Victor Sesay, and TAPSIRU DAINKEH,<br><br>Defendants. | 5:15-CR-50101-JLV<br><br>REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS THE SUPERSEDING INDICTMENT |

Pending are Defendant Tapsiru Dainkeh and Defendant Sesay's Motions to Dismiss the Superseding Indictment (Docs. 151 and 170) and Defendant Roy Conteh's Joinder (Doc. 155) in the Motion to Dismiss. A hearing was held on Monday, March 7, 2016. Roy Conteh, Victor Sesay, and Tapsiru Dainkeh were personally present and represented by their attorneys of record, Shiloh MacNally, John Rusch, and Jamy Patterson, respectively. The Government was represented by Megan Poppen. Six witnesses testified at the hearing. Forty exhibits were received into evidence. Both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on careful consideration of all the evidence, and counsels' written and oral arguments, the Court respectfully recommends that the motions to dismiss the superseding indictment be denied.

**JURISDICTION**

Defendants were initially charged in an Indictment with Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2 and Possession of Unauthorized Access Device, in violation of 18 U.S.C. §§ 1029(a)(3) and 2.

Subsequent to the evidentiary hearing, Defendants were charged in a Superseding Indictment with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §§ 1349 and 1344; Bank Fraud, in violation of 18 U.S.C. §§ 1344(2) and 2; Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2; and Possession of Unauthorized Access Device, in violation of 18 U.S.C. §§ 1029(a)(1) and 2.  The pending Motions were referred to the Magistrate Judge for consideration.  (Doc. 158).

**FACTUAL BACKGROUND**

On July 10, 2015, Trooper Zac Bader stopped the Defendants for speeding on Interstate 90.  The details of this traffic stop are contained in this court's report and recommendation to grant in part and deny in part Defendants' motions to suppress.  (Doc. 125).  At issue in the motions to dismiss is the missing video recording of the stop from Trooper Bader's patrol car that captured the circumstances of the stop, detention and subsequent search of the Defendants' vehicle.

Mark Wetzel, who has worked for 19 years as an engineer specialist doing computer and server support at the South Dakota Bureau of Information and Telecommunication, testified about how troopers patrol videos are recorded and saved.  He testified that Trooper Bader's patrol car is equipped

with a camera system that begins recording 30 seconds before it is activated. One way to activate the camera, and the way it was activated on July 10, 2015, is when the patrol car's lights are activated. Once a video is captured, it is stored on a memory card. Each trooper has one memory card. The trooper takes the memory card to a station to offload the memory card. The trooper signs in and the software automatically offloads the data from the memory card. The trooper takes no manual action during the offload process. Once the data is off the card, the memory card is wiped, so the trooper can reuse the card to capture more data.

    The offloaded data is stored in the main server in Pierre, South Dakota. The data is then viewable, but cannot be deleted by anyone except Mark Wetzel, Mr. Wetzel's two backup colleagues, Majors, the Captain and anyone Mr. Wetzel authorizes. According to Wetzel, a trooper can access and view their own videos and do not have access to anyone else's video recordings. A trooper cannot delete his video recordings. Only Sergeants can see videos of their subordinates.

    The videos are categorized by certain "tags." According to Trooper Bader there are approximately 15 tagging options. These include tags for a traffic stop and a criminal apprehension or investigation. Videos can be saved without a tag. Troopers are "forced" to tag a video because at the end of a stop, a prompt appears on the trooper's screen with the tagging categories. A trooper must tag a video during this time, unless one of four things occurs: the trooper selects a tagging option; the car shuts off; the car is idle for 15 minutes

or, as has occurred on a few occasions, there has been a problem where the prompt will not appear at all.

A video is preserved for a certain length of time depending upon how it is tagged. Mr. Wetzel testified that a video tagged as a traffic stop is saved for 90-120 days. A video tagged as a criminal apprehension or investigation is saved for 3 years. If a video is not tagged or it is saved as a test, it is saved for 30 days. Mr. Wetzel testified that it is common for troopers to forget to tag their videos. He testified that he is involved in training and they are now training troopers to go back within two days of offloading their videos and confirm they are correctly tagged.

Mr. Wetzel received a request on November 18, 2015, to search for Trooper Bader's July 10, 2015, traffic stop involving the defendants. He was unable to find the video. It appeared that Trooper Bader had offloaded his memory card within a few days of the stop at issue. Mr. Wetzel determined the video had not been categorized because videos categorized as a traffic stop or a DUI were still in the system. The video would have been deleted on or about August 10, 2015, because that would have been approximately 30 days from the stop. Mr. Wetzel could tell there were other untagged videos that were missing because there were videos missing between certain hours. He testified that the only way to have preserved the video in this case is if it had been properly tagged at the time of the stop.

Trooper Bader testified that the video was lost because he failed to properly tag it. He has failed to properly tag a video in the past. The video

4

recording system will automatically populate a tag using the tag of the previous video. Trooper Bader has occasionally forgotten to tag or has incorrectly tagged his videos in the past. He testified that missing videos were able to be found in the past, but this is the first time the video was completely gone. He testified he did not intentionally delete the video and has no ability to delete his own video. He testified he is not savvy enough to figure out how to delete videos. Trooper Bader testified that before this incident, he was previously unaware of how long videos were saved.

## DISCUSSION

Defendants argue that the destruction of the video of their vehicle stop was destruction of exculpatory evidence. They argue that such a destruction was a violation of due process and the Superseding Indictment must be dismissed. The United States argues that the defendants' due process rights were not violated and the Superseding Indictment should not be dismissed. The government argues that the video was, at worst, negligently destroyed and the audio of the stop and cross examination of the officers provides the defendants with an adequate substitute for the video.

Destruction of exculpatory evidence is a violation of due process when the exculpatory value is apparent before the evidence was destroyed and it is of "a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 488-89 (1984). Alternatively, the "failure to preserve *potentially* useful evidence" does not constitute a due process violation, unless the defendant can

5

"show bad faith on the part of the police." Arizona v. Youngblood, 488 U.S. 51, 58 (1988) (emphasis added); United States v. Tyerman, 701 F.3d 552, 560 (8th Cir. 2012) (there is a "higher standard of proof when the evidence is only potentially useful to the defendant"). The defendant must show bad faith and not mere negligence. Youngblood, 488 U.S. at 58.

The United States argues that the video would be more inculpatory than exculpatory. (Doc. 86 at p. 5). This court does not agree. In Tyerman, the court found that a defendant who was charged with possession of a stolen firearm, did not have his due process rights violated when the firearm at issue was destroyed. 701 F.3d at 560. The fingerprints on the firearm were tested prior to the firearm's destruction and the defendant's fingerprints were found on the firearm. Id. Plus, the court found that having the firearm in court would be more inculpatory to the defendant than exculpatory. Id.

The case at bar differs from Tyerman in that the video would not necessarily be more inculpatory than exculpatory. The video could very well contradict the officer's report and testimony. It could show that the defendants refused consent to search, were not nervous, or any number of factors. It is only if the officers' testimony and reports are believed that the video would be more inculpatory than exculpatory.

The video was not something that would be apparently exculpatory before its destruction, but it does have the potential to be exculpatory depending upon what it would show. Thus, the defendants must show bad

faith on the part of the police in destroying the potentially useful video to sustain a due process claim.

After considering the testimony provided at the hearing, the court recommends that the motions to dismiss the Superseding Indictment be denied. The defendants have failed to show that the loss of the video was the result of bad faith on the part of the police. The testimony presented showed that Trooper Bader would not have had access to the video to delete it. The categorization of the videos determines the amount of time a video would be deleted. Despite the improper or lack of tagging, the court does not find that Trooper Bader mistagged or failed to tag the video in bad faith. Sloppy record keeping plus routine deletion is not equivalent to bad faith. See e.g. United States v. Webster, 625 F.3d 439, 440-41 (8th Cir. 2010) (a case was transferred from state to federal authorities, but a notice of transfer was not placed in the file leading to the destruction of evidence in a semiannual scheduled destruction because the case was incorrectly marked as closed). Thus, the Defendants' due process rights were not violated.

## **CONCLUSION**

It is respectfully recommended that the defendants' motions to dismiss the superseding indictment be denied.

## **NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely

objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

DATED this 10th day of October, 2016.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge